# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

RONALD VALDEZ,

        Plaintiff,

v.	No. CIV 99-1334 BB/WWD

WILLIAMS ENERGY SERVICES, a foreign
corporation,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court for consideration of Defendant's motion for summary judgment (Doc. 63) and Plaintiff's motion to amend his complaint (Doc. 67). The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, finds that the summary-judgment motion will be granted in part and denied in part, and the motion to amend the complaint will be denied.

Plaintiff was employed by Defendant for a number of years, prior to the termination of his employment in June of 1999. Defendant terminated Plaintiff's employment after Plaintiff was involved in a motor vehicle accident and then, pursuant to company policy, provided a urine sample which purportedly tested positive for cocaine. Although Plaintiff protested that he does not use illegal drugs and the positive test must be an error, Defendant fired Plaintiff. Subsequently, Plaintiff filed this lawsuit alleging discrimination on the basis of race, breach of an implied contract, prima facie tort, and defamation. Defendant has moved for summary judgment on all claims. Plaintiff has responded by voluntarily dismissing his defamation claim, and by moving to amend his complaint to

add a claim for breach of the implied covenant of good faith and fair dealing that is present in every contract, including implied contracts.

"Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." Id. On a motion for summary judgment, the issue is "not whether [the court] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "Nevertheless, a jury question does not exist because of the presence of a mere scintilla of evidence; rather, there must be a conflict in substantial evidence to create a jury question." Walker v. NationsBank of Florida, 53 F.3d 1548, 1555 (11th Cir. 1995). The Court will consider Defendant's motion in light of these standards.

**Chronology of Events[1]**

Plaintiff was involved in the vehicle accident while driving a company truck, on June 3, 1999. The accident occurred on a narrow, one-lane road as Plaintiff was about to crest a hill. Plaintiff was initially given a citation for crossing the center line, but the citation was later dismissed. At the hospital, where Plaintiff was taken following the accident, Plaintiff was required to provide a urine sample to be tested for the presence of illegal substances. Plaintiff alleges that after he gave the samples to the technician, she left the room and returned a few minutes later with the seals for the

---

[1] The following factual summary is based on undisputed facts or, where the facts are disputed, is based on the facts most favorable to Plaintiff.

samples, which she asked him to sign. However, this information concerning a claimed break in the chain of custody was not communicated to Defendant until Plaintiff's deposition, well after Plaintiff had been terminated. The samples were sent to a laboratory for testing, which revealed the presence of large amounts of cocaine. On June 15, 1999, twelve days after the accident, Plaintiff was fired due to the positive drug test. Plaintiff protested vigorously, maintaining he does not use drugs and offering to provide a new sample for a re-test. Defendant declined to change its decision and declined to allow a re-test to be performed. At some point, however, unbeknownst to Plaintiff, the urine sample was tested again and again tested positive for cocaine.

Plaintiff contacted an attorney who wrote a letter demanding that he be reinstated, but not mentioning the claimed break in the chain of custody. The letter did request an investigation into the "false positive" test results. In a subsequent letter, dated July 15, 1999, Plaintiff's attorney requested an opportunity to perform DNA testing on the sample, to try to prove the sample did not come from Plaintiff. This DNA test was never performed, apparently because the testing laboratory indicated there was not enough of the sample remaining upon which to perform such a test. After this lawsuit was filed, on February 25, 2000, Plaintiff took a polygraph examination and passed with an extremely high score.[2] Defendant has at all times refused to reinstate Plaintiff to his job, and continues to so refuse.

**Title VII Claim**

Plaintiff's claim of discrimination is based on his assertion that other employees of Defendant, who were not Hispanic, have tested positive for illegal drugs but have not been terminated. He has presented no direct evidence of discrimination, and must therefore rely on the familiar *McDonnell*

---

[2]The exact questions asked Plaintiff, and his responses, are not part of the evidence that has been submitted to the Court at this time.

3

*Douglas* burden-shifting analysis. Under that analysis, for a discriminatory-termination claim, a plaintiff makes out a prima facie case of discrimination by establishing the following: (1) he belongs to a protected class; (2) he was qualified for the job; (3) he was discharged; and (4) the job was not eliminated after his discharge. *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1229 (10th Cir. 2000). Plaintiff has met that burden here by presenting evidence that he is Hispanic, was performing his job satisfactorily prior to his discharge, was discharged, and was not discharged as a result of any elimination of his position. Therefore, the Court moves to the pretext phase of the *McDonnell Douglas* framework.

Defendant met its burden under the pretext phase by proffering a race-neutral explanation for the discharge – Plaintiff's positive drug test following the motor vehicle accident. The burden therefore shifts back to Plaintiff to introduce evidence tending to indicate that Defendant's explanation is a pretext for discrimination, and it is here that Plaintiff comes up short. Plaintiff has attempted to create an issue of fact as to whether non-Hispanic employees who tested positive for drugs were treated more favorably than he was treated. That attempt, however, is based on hearsay evidence that would not be admissible in court and is insufficient to preclude summary judgment. *See Jeffries v. State of Kansas*, 147 F.3d 1220, 1224, n. 1 (10th Cir. 1998) (inadmissible hearsay evidence in an affidavit is not considered on a motion for summary judgment); *Treff v. Galetka*, 74 F.3d 191, 195 (10th Cir. 1996) (inadmissible hearsay evidence in an affidavit will not defeat summary judgment).

For example, Plaintiff has proffered the affidavit of his investigator, Michael Corwin, who averred that he had interviewed one of Defendant's employees, Charlie Sabelman. According to the affidavit, Sabelman told Corwin that he (Sabelman) had been notified five or six years ago that he had failed a drug test, that he then contacted Defendant's human resources director to tell the director he

4

did not take drugs, and that the director authorized a re-test, which Sabelman passed. It is clear that all of this information is inadmissible hearsay, constituting what Corwin was supposedly told by Sabelman. Furthermore, Defendant has submitted an affidavit from Sabelman himself, stating that he never failed a drug test. Instead, after one drug test he had been contacted by a lab technician who told him there had been a failure in the chain of custody after Sabelman provided his sample, and requested that he supply another. Sabelman did so and the test was negative. To Sabelman's knowledge, the first sample was never tested due to the failure in the chain of custody. Thus, Sabelman's direct testimony contradicts the hearsay testimony attributed to Corwin. His direct testimony also contradicts another hearsay affidavit submitted by Plaintiff, that of Ruben Perea. According to this affidavit, Perea had been at a meeting where "it was discussed" that Sabelman had failed a drug test but then re-tested and passed. Again, this hearsay testimony must be disregarded in favor of the direct testimony given by Sabelman himself.

  Similarly, Plaintiff attempted to show that another non-Hispanic employee of Defendant, Kate Woodfill, had failed a drug test, been allowed to take a re-test which she passed, and remained on the job. Plaintiff did so by submitting an affidavit of George Loretto, stating that he had been in an office while Ms. Woodfill and another employee of Defendant "were talking about how Kate had failed a drug test." Mr. Loretto also stated, without specifying the source of this knowledge, that Ms. Woodfill took a re-test and was allowed to stay on the job. Contradicting this hearsay information is the affidavit of Ms. Woodfill herself, submitted by Defendant. Ms. Woodfill denies ever having tested positive for drugs, or ever taking a re-test. Again, this direct evidence has evidentiary value, while the hearsay statements attributed to her by Mr. Loretto do not. The Court also notes the affidavit of Louis Dibella, director of human resources for Defendant, indicating that Mr. Dibella has never been notified of any failed drug test involving Ms. Woodfill or Mr. Sabelman. In sum, the only

5

evidence submitted by Plaintiff, to the effect that he is being treated differently than similarly-situated non-Hispanics, is pure hearsay and cannot be considered for purposes of this summary-judgment proceeding.[3]

In addition to his attempt to show differential treatment of other employees who tested positive for drugs, Plaintiff argues that the circumstances of the case in general point toward pretext. The Court disagrees. The only circumstance Plaintiff points to is his vigorous assertion that the drug test that he failed was invalid. However, regardless of the truth or falsity of that assertion, it is the belief of the decisionmakers at the time Plaintiff was discharged that is relevant to the pretext issue. *See Kendrick,* 220 F.3d at 1231 (challenge of pretext requires court to look at the facts as they appear to the person making the decision to terminate the employee). In other words, if Defendant's managerial employees believed Plaintiff had tested positive for drugs at the time he was discharged, the proffered reason for his discharge would not be pretextual even if it later turned out the test was invalid. *See id.* In this case, the only information Defendant had at the time of the discharge was that Plaintiff's urine test was positive for cocaine, and that he denied using cocaine. The mere fact that Plaintiff denied using drugs is not, standing alone, evidence that Defendant's managers believed the drug test was invalid at the time Plaintiff was discharged. Therefore, it is not evidence that the reason given for Plaintiff's discharge, the positive drug test, was a pretext for illegal discrimination on the basis of race.

As discussed above, Plaintiff has provided no admissible evidence indicating that non-Hispanic employees who tested positive for illegal substances were treated more favorably than he was. In

---

[3]In his deposition, Plaintiff alluded to several other instances in which he claimed non-Hispanics had been treated more leniently than he was. However, all of his examples were based on rumor or workplace speculation, and are therefore not competent evidence for summary-judgment purposes.

addition, he has provided no admissible evidence indicating that Defendant, at the time Plaintiff was discharged, did not believe he had actually tested positive for cocaine. Therefore, Plaintiff has failed to raise a genuine issue of fact on the issue of pretext. Summary judgment is appropriate on Plaintiff's Title VII claim.

**Prima Facie Tort**

A prima facie tort occurs when a lawful act is performed with an intent to injure and without sufficient economic or social justification, resulting in injury. *See Silverman v. Progressive Broadcasting, Inc.*, 964 P.2d 61, 71 (N.M.App. 1998). This tort is not to be used as a substitute for other possible claims, or as a means of avoiding the legal requirements for stating such other claims. *See Beavers v. Johnson Controls World Servs., Inc.*, 901 P.2d 761, 766 (N.M.App. 1995). In determining whether sufficient evidence has been introduced to state a claim for prima facie tort, this Court must balance Defendant's malicious intent, if any, against the justification for the injurious act and the severity of the injury. *See Silverman*, 964 P.2d at 72. In this case, Plaintiff has introduced no evidence of malicious intent on the part of Defendant or any of Defendant's employees. At most, Plaintiff has established issues of fact concerning the following: (1) that Plaintiff tested positive for cocaine following the motor vehicle accident; (2) that Defendant's employees discounted his protestations, believed the test results, and acted on them without further investigation; (3) that Defendant's employees refused to allow Plaintiff to provide a new urine sample twelve days after the accident, at a time when a layperson could reasonably believe any drugs in Plaintiff's system would have been dissipated[4]; and (4) that Defendant refused to relent and invalidate the test results, even

---

[4]Very little evidence has been introduced concerning the amount of time cocaine remains in a person's system, detectable by a test; what little evidence there is, indicates there is "zero probability" of finding cocaine in a test taken over a week after the accident. *See* Report by Chemical Dependence Associates, Def. Exh. 33, attached to Reply brief.

when Plaintiff later passed a polygraph examination and provided evidence questioning the chain of custody and indicating how a mix-up in urine samples might have occurred. There is no evidence of any reason for Defendant to have had malicious intent toward Plaintiff, and the facts adduced by Plaintiff are not so extreme as to allow an inference of such malicious intent. Furthermore, terminating an employee who has tested positive for cocaine, following a motor vehicle accident that caused injuries, is supported by strong economic and societal justification.[5] *See generally Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602 (1989). This fact remains true even when evidence subsequently comes to light casting some doubt on the validity of the drug test, especially where, as here, the later-produced evidence merely provides an alternative explanation but does not conclusively debunk the results of the test. The Court will find that Plaintiff has failed to create a genuine issue of fact as to whether Defendant committed a prima facie tort by its actions in this case.

**Breach of Implied Contract**

In order to defeat Defendant's motion for summary judgment on this issue, Plaintiff must raise a genuine issue of material fact concerning two questions: whether any implied contract existed between the parties, and if so whether that implied contract was breached. Defendant maintains the employment relationship between Plaintiff and Defendant was an at-will relationship, and that Plaintiff could be discharged at any time for any reason. Defendant relies heavily on disclaimers contained in several of its employee policy manuals, including the alcohol and drug abuse policy manual. These disclaimers state explicitly that nothing in the policies is to be construed as an employment contract, or to alter an employee's at-will status; instead, any employee remains free to resign at any time, for

---

[5]Certainly there is also justification for giving good, long-term employees such as Plaintiff a second chance in response to a positive drug test. *See, e.g., Eastern Associated Coal Corp. v. United Mine Workers of America*, 121 S.Ct. 462 (2000). In balancing the circumstances, however, the Court need balance only the justifications for the action Defendant did take, rather than the actions Defendant might have taken.

any reason, and Defendant reserves the right to terminate any employee's employment for any reason. Plaintiff, on the other hand, emphasizes the detailed requirements established in the alcohol-and-substance-abuse manual, and maintains these detailed requirements override the plain language of the at-will disclaimers.

The fact that a policy manual contains a disclaimer is not dispositive of the question of whether an implied contract has been created. *See McGinnis v. Honeywell, Inc.*, 791 P.2d 452, 457 (N.M. 1990) (quoting Tenth Circuit case of *Zaccardi v. Zale Corp.*, 856 F.2d 1473 (10th Cir. 1988)). Instead, the employer's norms of conduct, and employee expectations founded upon those norms, may contradict the disclaimers and lead to the conclusion that an implied contract has been formed. *See id.* These norms of conduct may be established in several ways, including a simple examination of specific language and promises contained elsewhere in an employer's policies and manuals. *See id.* In other words, where one part of an employment manual claims the relationship is an at-will relationship, but another part of the manual makes promises upon which an employee would reasonably rely, an implied or even express contract may exist. *See id.* Such promises by an employer are binding regardless of whether the employee has bargained for the promises or has provided additional consideration, other than continuing to work for the employer, in exchange for those promises. *See Hartbarger v. Frank Paxton Co.*, 857 P.2d 776, 771-72 (N.M. 1993). Ordinarily, the question of what constitutes an employee's reasonable expectations, based on the employer's norms of conduct and representations, is a question of fact for the jury, and is not readily amenable to resolution by summary judgment. *See Kiedrowski v. Citizens Bank*, 893 P.2d 468, 471 (N.M.App. 1995).

In this case, as Defendant points out, several of its manuals, and the substance-abuse policy in particular, contain at-will disclaimers purporting to ensure that the employment relationship

remains at-will, regardless of any other contents of the manuals. However, the manuals also contain statements that sound like explicit promises by Defendant to take certain actions, upon which an employee might reasonably rely. In particular, the substance-abuse manual states as follows: "In the event of an invalid test result, no action will be taken against an employee as a result of a positive test result subsequently deemed invalid. In the event adverse action has been taken against an employee based upon a test result later determined to be invalid, Williams Field Services will reinstate and compensate the employee for any lost wages and /or benefit." This statement can reasonably be read as an implied, or even express, promise to take no adverse employment action as a result of an invalid drug test, or to reverse such adverse action if it has already been taken. Given the strong language of this provision, a jury could find that it overrides the at-will disclaimer contained elsewhere in the substance-abuse manual, and limits Defendant's power to discharge an employee who has tested positive for drugs in an invalid test. Therefore, summary judgment is not appropriate on the question of the existence of an implied (or express) employment contract.[6]

Similarly, there are genuine issues of material fact concerning the question of whether Defendant breached the implied contract regarding invalid drug tests, if such a contract existed. There are questions as to what duty Defendant might have had to investigate the validity of the drug test, once Plaintiff insisted the test must be invalid. Instead of performing any investigation, which might have revealed the claimed break in the chain of custody (if such a break actually occurred), Defendant simply discharged Plaintiff. There are also questions of fact as to whether the drug test results were indeed invalid. The jury could choose to believe that a break in the chain of custody did occur, which under Defendant's own regulations might invalidate the test results. Similarly, the jury

---

[6]The Court does not mean to suggest that the at-will relationship has universally been converted into one requiring good cause for any discharge. The only provision relevant to this case, and the only focus of this discussion, is the provision concerning the results of an invalid drug test.

could credit Plaintiff's attempt to have a DNA test performed on the sample, as evidence of the truth of his assertion that he had not taken drugs on the date of the accident. Furthermore, if the polygraph examination proves to be admissible for any purpose, a question the Court does not decide at this time,[7] it could constitute further evidence in support of Plaintiff's claim that the drug test was invalid. In sum, Plaintiff has raised genuine issues of material fact as to whether the drug test results were invalid, and as to whether Defendant breached any contract by refusing to recognize and act on that invalidity.[8] Summary judgment will therefore not be granted on Plaintiff's breach-of-implied-contract claim.

**Motion to Amend Complaint**

Plaintiff has moved to amend his complaint to consolidate the two complaints into one,[9] to drop his defamation claim, and to add a claim for breach of the implied covenant of good faith and fair dealing that is contained in every contract. The decision to grant or deny leave to amend a complaint, after the permissive period has expired, is well within this Court's discretion. *See Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir.1994). Given the Court's rulings in this opinion, it is unnecessary to amend the complaint to consolidate the Title VII claim with the other claims, since that claim will be dismissed. It is also unnecessary to amend the complaint to drop the

---

[7]*See Palmer v. City of Monticello*, 31 F.3d 1499, 1506 (10th Cir. 1994) (general rule is that polygraph results are inadmissible, although performance of a polygraph examination may itself be relevant and admissible evidence).

[8]Due to Defendant's possible contractual obligation, Defendant's argument that it is not liable for negligence by the drug testing company is inapposite. Under Plaintiff's theory, which as discussed above is subject to disputed facts, Defendant obligated itself to refrain from acting on the basis of drug test results that were later shown to be invalid. Thus, it is Defendant's own actions, rather than the actions of the drug testing company, that provide the potential basis for liability.

[9]This case is the result of the consolidation of a state-court lawsuit that was removed to this Court, with a federal-court Title VII lawsuit filed later by Plaintiff.

defamation claim; since Plaintiff has abandoned it, the jury will simply not be told about that claim. The only real issue is whether Plaintiff should be allowed to amend his complaint to add the covenant-of-good-faith-and-fair-dealing claim.

Every contract, express or implied, imposes on the parties a duty of good faith and fair dealing in its performance. *See Bourgeous v. Horizon Healthcare Corp.*, 872 P.2d 852, 856 (N.M. 1994). The breach of such duty does not give rise to a tort claim, except in the context of insurance contracts. *See id.*, 872 P.2d at 857. Instead, the remedy for such a breach is on the contract itself. *See id.* Plaintiff's attempt to amend his complaint, and Defendant's opposition to that attempt, appear to be based on the possibility that, rather than being implicit in Plaintiff's breach-of-contract claim, the good-faith-and-fair-dealing theory must be separately pled in order to allow the jury to consider it as a basis for breach of contract. In other words, Plaintiff is concerned that he will be precluded from giving the jury an instruction concerning the covenant of good faith and fair dealing, and will be precluded from arguing the existence of that covenant, if he is not allowed to amend his complaint. Defendant, on the other hand, wishes to achieve exactly that result by opposing the desired amendment. The Court, however, does not find any requirement in the law that a contractual breach-of-covenant claim must be separately pled, apart from the accompanying breach-of-contract claim. The *Bourgeous* case certainly did not create such a requirement. Instead, *Bourgeous* merely held that a covenant of good faith and fair dealing exists in employment contracts as well as other types of contracts; that recovery for the breach of such covenant is contractual in nature rather than in tort; and that the district court had erred by refusing to allow the jury to consider the covenant, by directing a verdict on the breach-of-covenant claim. *See id.* Since the covenant of good faith and fair dealing is implied in every contract, there is no reason to require that a claim for breach of that covenant be pled as an independent breach of contract. A party's failure to act in good faith in

12

executing the contract is simply one way in which the contract may be breached. It is not necessary, therefore, for Plaintiff to amend his complaint to add an independent claim for breach of the covenant; that claim is implicit in his breach of contract claim.[10]

Based on the foregoing discussion, the motion to amend the complaint will be denied.

**Conclusion**

Based on the foregoing, the Court will grant Defendant's motion for summary judgment as to Plaintiff's Title VII claim and his prima-facie-tort claim, and will deny it as to the breach-of-contract claim. Furthermore, Plaintiff's request to amend his complaint to add a claim for breach of the covenant of good faith and fair dealing will be denied, although he will not be precluded from arguing that theory to the jury in support of his breach-of-contract claim.

## ORDER

A memorandum opinion having been entered this date, it is hereby ORDERED that Defendant's motion for summary judgment (Doc. 63) be, and hereby is, GRANTED in part and DENIED in part, and Plaintiff's motion to amend his complaint (Doc. 67) is hereby DENIED.

---

[10] The Court notes, however, that Plaintiff will not be allowed to expand his breach of contract claim beyond its current parameters and beyond the bounds of the discovery that has been performed. To allow such an expansion, through the device of arguing the breach-of-covenant theory in support of the breach-of-contract claim, would cause undue prejudice to Defendant.

Dated this 24th day of January, 2001.

_____
BRUCE D. BLACK
United States District Judge

**ATTORNEYS**:

**For Plaintiff**:
Brad D. Hall
Law Office of Brad D. Hall
3200 Carlisle Blvd. N.E., Suite 224-A
Albuquerque, New Mexico 87110

**For Defendants**:
Charles J. Vigil
Rodey, Dickason, Sloan, Akin & Robb, P.A.
P.O. Box 1888
Albuquerque, New Mexico 87103

J. Patrick Cremin
William D. Fisher
Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.
320 South Boston Ave., Suite 400
Tulsa, Oklahoma 74103

Connie Lee Kirkland
Mark A. Waller
The Williams Companies, Inc.
One Williams Center, Suite 4100
P.O. Box 2400, MD 41-3
Tulsa, Oklahoma 74172